Good afternoon, Your Honor. Please, it's the court on behalf of Petitioner Mohammad Azzolgari-Serin. We're asking this Court of Appeals, as the last resort for my client, to overturn the I.J. Immigration Judge's credibility finding, and obviously the Board of Immigration Appeals' credibility finding, as it's completely based on a incomplete interview. When my client came into this country, he asked for asylum. He had a Pakistani passport. He was interviewed at the airport, and we ask you, at that time, to evaluate that statement in the light of all the circumstances of the case, not solely as the immigration judge did, over the credibility findings of a trained asylum officer. The law changed in 1996, and the detaining officers could have sent him back on the next plane. They selected not to because they felt he had some kind of claim. The issue of interpretation, and that's why case law after case law states how important it is to have a certified interpreter. You had an INS at this time, now part of translated. We don't know the setting, the circumstances of that conversation, but we do know it contradicts his credible fear asylum interview, which was done by a trained officer who came to the conclusion my client had a credible fear and served him with a notice to appear as required by the law, in his or her opinion, that my client, if he went back to Pakistan in the year 2000, would be harmed or killed based on his political opinion as a member of the Muslim League who had participated in a demonstration against the military dictatorship. We, meaning my client, presented all this evidence to the immigration judge. The fraud charge was dropped and withdrawn by the government. The government was told to provide all the statements of my clients, refused to do it, never did. We provided the uncertified statements. We presented this hoping that we would get a neutral arbiter of fact. We found a hostile judge who refused to look at anything else except come to the correct conclusion that my client's credible fear interview with his sworn testimony in cross-examination matched. It was consistency, except for the interview taken at the airport. And that was the basis for her adverse credibility finding. The immigration judge then showed further hostility when she attacked my client for holding demonstrations under the military dictatorship when, in fact, he was a Muslim and the military dictator was a Muslim. She couldn't understand the difference. That was the extent of her understanding of the political conditions in Pakistan. And why would my they said because they wanted democracy. That's why he held a demonstration. And that was the basis of his fear. Counsel, there's some rather odd inconsistencies. He said his father sold land for $10,000 to give him the money to come to America. And that another part, his father was disappeared and possibly killed. How do we put these stories together? That's the third issue, Your Honor. And that was the issue raised by the Board of Immigration Appeals. The immigration judge never raised that. We weren't ever given an opportunity to address that. Now, I don't know at this time if he said what you're saying. He said that his father sold land at $10,000. At what time his father sold the land? I think he consistently stated at his sworn testimony that his father disappeared on the day of the rally. On the day of the rally, the question was, did he disappear at home or did he disappear at the rally when he was picked up by the police? There is some unclarity on that issue. But that wasn't even raised by the immigration judge. What he stated was, after that, his mother came to the conclusion his life was in danger and he had to flee. I just want to place that in the whole setting. Again, the immigration judge never found any inconsistency in his credible fear with his sworn testimony. You are reading a portion made up at this time by the Board of Immigration Judges' appeal without giving me an opportunity or my client an opportunity to address the very issue you're raising right now. At the asylum initial hearing, he said that he didn't have any fears of Pakistan and that he came over here to work and go to school. Now, it's hard to think that that would have been mistranslated. I mean, that's... That wasn't a credible fear interview. That was an issue at the airport. You may ask yourself, why do individuals lie when they come to the United States claiming asylum? We have history of cases, especially from this court, coming out stating you can't take those statements at face value. They're not given to a trained individual. They're given to a person who they feel at that time it's like an interrogation that they're saying. It wasn't a credible fear interview that he said that. Now, what explanation did he give to the I.J. as to why he had said that at the airport or that maybe he didn't say it? He said he didn't say that and he said he was very scared. He was very frightened. He kept emphasizing to the judge he was very frightened. He said I was very scared. Yeah, but he didn't deny that he'd said it. He didn't accept that he said it either. That is correct. The person... Did the counsel, judge, go over the question? At the airport, there was a translator, correct? There was a translator who was uncertified. That is correct. Who never signed any of the documents. Translating that Urdu, is that the language? He allegedly translated in Urdu. We don't know if he translated in Urdu. What did what did your client say happened there? Did he say that there was... He wasn't ever asked the question regarding the translation. He was asked at the airport if he ever said that. And he said, no, I didn't say that. I was very scared. The question before you at this time is, do you take the credible... Do you take the interview at its full face value or do you look at all the case law that's coming out of the 9th Circuit, the 2nd Circuit, that disregards and places this... Do you evaluate such statements in the light of all the circumstances of the case? Should you take this with all the other statements and then feel, is this something that is completely false? They're alleging that my client came on a false passport. The government never asked him any questions. The government said his passport is phony. They had it for four years in their possession. They never once said it was a phony passport. It wasn't meant to be a phony passport. That's what the IJ relied on. There was no cross-examination from the government attorney at any time except to ask if he was given asylum in Brazil. I would like to keep the balance of my time for about a minute. Thank you very much. May it please the Court. My name is Michelle Sarko. I'm here representing Attorney General Eric Holder in this case. This case involves the question of whether there is substantial evidence in the record to support the immigration judge's adverse credibility finding. And therefore, if there is, the petitioner did not carry his burdens of proof for the relief he sought. In this case, the immigration judge and the board looked at the airport interview given to the petitioner and contrasted that with his And the petitioner challenges the interpretation or the process of the airport interview based on some cases from the circuit. But I would also point out that the board looked at those cases, drew differences in those cases from the instant case. In this case, at the airport interview, the petitioner was given clear warnings about what specifically the interview was about. And he was specifically said, explain to him that, I want to explain your rights and the purpose and consequences of this interview. You do not appear to be admissible to the United States. I'm paraphrasing. This may result in your being denied admission and immediately returned to your home country without a hearing. If a decision is made and you refuse admission to the United States, you can be immediately removed from this country and barred for a period of five years or longer. This may be your only opportunity to present information to me and the INS to make the decision. It is very important that you tell me the truth. If you lie or give false information, you may be subject to criminal or civil penalties and barred from receiving immigration benefits. Except as I explained to you, you are not entitled to a hearing or a review. U.S. law provides protection. Counsel, we can read the document. Okay. What I wanted to emphasize is this next sentence about that U.S. law provides protection from harm, persecution, and torture. And so he clearly had a license. Well, we have and other cases have not been willing to give enormous weight to airport interviews. Now, the Lee case does indicate that. It does. I'm sorry. It might be helpful if you know where I'm going. Sorry. Go ahead. So the Lee case does indicate that there is a role for the airport interview. Now, counsel makes the point that when he went to the credible fear interview, he's now moving from one step to one where the asylum officers in the setting are more, as I understand it, that the asylum officers prepare for these interviews. They sit down in a much more controlled setting than being pulled out at the airport. And so in an asylum interview, we have that interview. And then he comes into – now he's before the IJ. So I'm having a little trouble understanding how one weighs in the process, puts an ultimately decisive weight on the airport interview and then bypasses the asylum interview. Well, I think the key here is that this is not like Singh or the other cases that he relied on where there was just sort of a continuation of his claim. Here, there was clear contrast in what he was claiming. At the airport, he claimed that he was coming as an economic refugee. He didn't claim any harm, fear of any harm from the government in Pakistan. This is clearly different than cases like Singh or the Third Circuit case that was cited where the petitioners maybe expressed some fear and then elaborated on that subsequently. There's also a clear difference in the cases because in those earlier cases, there's a question about the interpreter. In one case, there was no translator used at all, and the person didn't speak – I think it was him. And then in the other case, there was a series of translators. Apparently, the asylum officer thought there was enough question that he should be passed on for hearing before the IJ. He was forwarded for a hearing, yes. Pardon? Yes, you're correct. Yes. So I would assume we would give more weight to his recommendation than we would to what actually happened at the airport. Well, no, I wouldn't say that. Well, maybe you wouldn't say that, but maybe we would. Okay, but let me explain why I wouldn't say that. The reason I wouldn't say that is because of the clear statements that were taken down. And the petitioner, these statements were reviewed. If you look at the form, he had the opportunity to read back to him in Urdu what specifically was asked, what was his response. He initialed each page of the document. So his statements are clear at the airport interview in this case. Now, you have to also realize that these airport interviews over, you know, earlier ones were done years ago, and DHS has been refining their procedures, obviously. And so I would submit that in this particular case, looking at the particular circumstances here, that there was sufficient due process and that you can compare this particular interview against the subsequent statements. And I would also point out that even in the subsequent credible fear interview, he also made some, I think he claimed there that he was granted asylum in Brazil. And that is a clear contrast to the subsequent testimony that he never actually applied for asylum in Brazil, that rather he was giving an interview at the airport and led into the country and told them, then he's supposed to apply for asylum. In his credible fear interview, he said he was given asylum and that he subsequently lost his asylum papers. So there's also that contrast. With regard to the other inconsistency noted by the board, I would point out that although the immigration judge maybe didn't note that as a discrepancy, that actually he did discuss it in the facts section of his findings, saying that when the petitioner was at the airport interview, he said that his father paid, sold some land in order to pay for his trip to the United States. So it's in clear contrast to his testimony that his father, several months before, was disappeared, was arrested and disappeared. How can they do both? In the transcript of the IJ hearing, does he point out this inconsistency to the alien and ask him to explain it? I don't recall that the immigration judge did. However, I would say that the petitioner is the one who put in that airport interview. So it wasn't a surprise. He knew what the statement was. He put it into evidence. So he could have gone over it in his direct testimony. Even if it's not a surprise, counsel, isn't there some obligation, if the IJ thinks it's inconsistent for the IJ to tee up the question and see if he has any explanation? I don't know whether this Court has ruled on that specific point. But I would say that this Court has said, well, even if you don't rely on that particular discrepancy, you have all these other inconsistencies that have been set forth. And so there's no due process violation by the Board mentioning this additional point, if the Court finds that that should have been pointed out. And I would also say that there's discrepancies with regard to his initial statement that he was coming here because he wanted to work, find a job, that he had been a student, I think, back in Pakistan, and in subsequent testimony that he was a student, and that also on his passport, I believe, it had been changed to business as opposed to student. So there's this question about what he actually was doing back in Pakistan. He was 20 years old, and he was saying that he had just graduated from high school. That doesn't really add up. So there's also other inconsistencies that are noted both by the Board and the immigration judge. Kennedy. Okay. I think we have the argument. Do you have no more questions? I think not. Thank you. Thank you. Thank you very much, Your Honor. Just briefly to clear up the record. Counsel has unfortunately misstated the record. And going back again to the statements, it wasn't interpreted to my client. The key issue over here is she keeps emphasizing it was read back. Where does the interpreter state he read it back? He never read it to my client even once. Where does Mr. Bhatti, the INS officer, state I read back this information? He keeps telling this to the court. He never read it. He was just another guy hanging out there. That's why it's unreliable. How do we know that, what you just said? Well, because you have no facts to go by what she just said. Mr. Bhatti never said I translated it back. Mr. Bhatti never said he signed it in my presence. Mr. Bhatti never said I am a certified interpreter. No, no, no. But wait a minute. Your client, you introduced this into evidence, I understand. I introduced everything into evidence because I wanted the judge to look at the complete picture, because I have no subpoena powers. No, I understand. I'm just trying to get the source of it. So it comes in and it says, in Urdu, the interpreter is Bhatti, employed by INS. And that's put in, and your client signed all four pages. All four pages. So now what you're saying is that they didn't prove, that is the government didn't prove that the information in this document was accurately translated. Or was translated to my client, or it's written by the- Where does the burden fall on the government to do that? When you have an interpreter and you're interpreting in a language, you're required to put it on that page. It's in every document that is being translated. When the credible fear interview took place, the translator, the credible fear interview made a note, it was translated with a telephonic translator. Is there a regulation or BI rule? There's no place on this document for the interpreter to make any statement or do anything. There is at the end when the person signs it, the person who prepared the document, he could have asked the interpreter to sign it. Well, could have, but where is, how does the interpreter know he's supposed to do that? He's an officer working for the same government agency. I know, I know. Where's the regulation? I would have to look it up in HCFR. I believe all documents have to be properly authenticated. Was that cited in your briefs? It wasn't cited in the brief, but- Maybe you could send us a citation to that, because I saw you made that claim, but I couldn't find any basis for it. Again, I'm just thinking one basis of the claim, which is the credible fear. I understand. We have the argument. But the last part is, why does counsel believe that my client at the age of 20 couldn't be going to school? That, again, is based on speculation, like the whole case of the government is based on speculation. My client was, he showed actual proof of his citizenship, and to just show you the hostility of the judge when he got released from jail. The credible fear interview took place in a detention center. He wasn't with any attorneys. He wasn't coached on any story. This is something that a trained officer, asylum officer hired by INS- Counsel, we have the point. We know. We've read the briefs. Thank you very much. Thank you. All right. The case argued is submitted. We appreciate the arguments, and we'll submit the case. And that will put us in adjournment for the calendar week. Thank you. All rise. Thank you. Thank you.   Thank you. All right. Now we're adjourned. All right. I'll call you back.
judges: Fletcher B. , Fisher, Gould